# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 1:23-mj- 2 2 8
)
INFORMATION ASSOCIATED WITH PARTICULAR )
CELLULAR TOWERS )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached and incorporated herein.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1959 | Commission of a violent crime in aid of racketeering |

The application is based on these facts:

See attached affidavit of FBI Task Force Officer Matthew Hennessee.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matthew Hennessee, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/04/2023

*Judge's signature*

City and state: Chattanooga, Tennessee    Hon. Christopher H. Steger, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE SEARCH OF           )
INFORMATION ASSOCIATED WITH              )   CASE NO. 1:23-MJ- 228
PARTICULAR CELLULAR TOWERS               )
                                         )   **Filed Under Seal**
                                         )

## ATTACHMENT A

**Property to Be Searched**

Records and information associated with communications to and from the following cellular antenna towers ("cell towers") on the identified date(s) and timeframe(s) that are within the possession, custody, or control of the cellular service provider(s) identified below (all times are Eastern Standard Time):

- The cellular towers that provided cellular service to 1518 Market Street, Chattanooga, Tennessee 37408 between 2100 hours on May 25, 2023 and 0100 hours on May 26, 2023;

- The cellular towers that provided cellular service to 4817 Highway 58, Chattanooga, Tennessee 37416 between 0030 hours on May 26, 2023 and 0200 hours on May 26, 2023; and

- The cellular towers that provided cellular service to 975 East 3rd Street, Chattanooga, Tennessee 37403 between 0130 hours on May 26, 2023 and 0230 hours on May 26, 2023.

The following cellular service provider(s) are required to disclose information to the United States pursuant to this warrant:

1. Verizon Wireless, a cellular service provider headquartered in Bedminster, New Jersey;

2. AT&T, a cellular service provider headquartered in North Palm Beach, Florida;

3. Sprint, a cellular service provider headquartered in Overland Park, Kansas;

4. Nextel, a cellular service provider headquartered in Reston, Virginia;

5. T-Mobile, a cellular service provider headquartered in Parsippany, New Jersey;

6. Metro PCS, a cellular service provider headquartered in Richardson, Texas;

7. Cricket Communications, a cellular service provider headquartered in Atlanta, Georgia; and

8. U.S. Cellular, a cellular service provider headquartered in Chicago, Illinois.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE SEARCH OF )
INFORMATION ASSOCIATED WITH ) CASE NO. 1:23-MJ- 228
PARTICULAR CELLULAR TOWERS )
) **Filed Under Seal**
)

## ATTACHMENT B

**Particular Things to be Seized**

I. **Information to be Disclosed by the Provider**

For each cell tower in described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States records and other information (not including the contents of communications) about all communications made using the cellular tower(s) identified in Attachment A during the corresponding timeframe(s) listed in Attachment A, including records that identify:

   a. the telephone call number and unique identifiers for each wireless device in the vicinity of the cell tower ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

   b. for each communication, the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device; and

c. the date, time, and duration of each communication.

These records should include records about communications that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. Section 1959 during the period of May 25, 2023 to May 26, 2023.

The government will protect tower dump information related to innocent third parties by seizing only information relevant to phones that used more than one tower as identified in Attachment A.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Providers in order to locate the things particularly described in this Warrant.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) <br> INFORMATION ASSOCIATED WITH ) <br> PARTICULAR CELLULAR TOWERS ) <br> ) | CASE NO. 1:23-MJ- 2 2 8 <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Hennessee, being first duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant for records and information associated with certain cellular towers ("cell towers") that is in the possession, custody, and/or control of Verizon Wireless, a cellular service provider headquartered in Bedminster, New Jersey; and AT&T, a cellular service provider headquartered in North Palm Beach, Florida; and Sprint, a cellular service provider headquartered in Overland Park, Kansas; and Nextel, a cellular service provider headquartered in Reston, Virginia; and T-Mobile, a cellular service provider headquartered in Parsippany, New Jersey; and Metro PCS, a cellular service provider headquartered in Richardson, Texas; and Cricket Communications, a cellular service provider headquartered in Atlanta, Georgia; and U.S. Cellular, a cellular service provider headquartered in Chicago, Illinois (collectively, "the Service Providers"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Providers to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Task Force Officer with the Federal Bureau of Investigation (FBI), United States Department of Justice, and as such, I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7). I am currently employed as an Investigator with the Chattanooga Police Department and has been so employed since March 1995. In May 2001, I was assigned to the FBI Safe Streets Task Force, Knoxville Division, Chattanooga Resident Agency. At that time, I was assigned and deputized to investigate violent crime to include, but not limited to, bank robbery, narcotics trafficking, violent crime, street gang crimes, and other federal crimes not listed. I have participated in training regarding how to conduct federal criminal investigations, particularly with respect to violent crime, locating and acquiring evidence of criminal activity, including cellular telephones, and seizing evidence and assets related to/derived from such criminal activity.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. Section 1959, violent crimes in aid of racketeering activity, have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. The United States, including the Federal Bureau of Investigation, is assisting the Chattanooga Police Department in an investigation regarding the homicide of BRODERICK LAY, a high-ranking Blood gang associate, which occurred on May 26, 2023 at approximately 1:38 am (0138 hours).

6. On May 26, 2023, at approximately 0138 hours, Chattanooga Police Officers responded to a person shot at Studio 58 Sports Bar located at 4817 Highway 58, Chattanooga, Tennessee, 37416 (Studio 58). On scene, Police located BRODERICK LAY suffering from multiple apparent gunshot wounds. LAY was pronounced deceased at the scene. A short time later, KEMONTI MCDOWELL, a Rollin 60 Crips gang associate, arrived at Erlanger Hospital located at 975 East 3rd Street, Chattanooga, Tennessee 37403 (Erlanger Hospital), by privately owned vehicle, which was a Black Lexus SUV bearing Tennessee license plate BNS6360. MCDOWELL was suffering from several apparent gunshot wounds. It was determined through investigation that both victims were shot at Studio 58.

7. On May 26, 2023, during the course of the investigation, the police determined a physical altercation had begun at the front of Studio 58 involving LAY. The altercation then escalated when multiple persons began shooting. Multiple witnesses have described MCDOWELL as the individual who was physically fighting with LAY near the front door of the business, leading to several gunshots.

8. Video surveillance footage was obtained from a business near Studio 58. The surveillance footage showed a Black Lexus SUV that was later confirmed to be the one that dropped off MCDOWELL at Erlanger Hospital after the shooting as being the same Black Lexus SUV that had been parked in the parking lot at Studio 58 prior to the shooting. Detectives observed

several individuals running as if they were reacting to gunfire. A few moments later, MCDOWELL ran from the front side of Studio 58, entered the rear driver's side of the Black Lexus SUV, and then sped away from the scene.

9. Multiple witnesses advised that both LAY and MCDOWELL were at the Chattanooga Cigar Club located in downtown Chattanooga at 1518 Market Street, Chattanooga, Tennessee 37408 (Cigar Club), prior to the incident at Studio 58. The police obtained surveillance footage from the Cigar Club from the night of the homicide. The police observed that LAY arrived at the Cigar Club and walked up E 16th Street towards the Cigar Club, with DEONTA BANKS, Gangster Disciple gang associate, following behind him. The surveillance footage shows LAY leave and reenter the Cigar Club with BANKS and other known gang members and associates of LAY. When the Cigar Club closed, surveillance footage showed MONTRELL BROWN, Blood gang associate, in an altercation with an unknown individual in the intersection of Underwood Street and E 16th Street. LAY and BANKS were standing in the middle of the altercation as well, but due to video quality, their involvement in the altercation was unclear. Following the altercation, LAY and BANKS walked east on E 16th Street together.

10. The police do not currently know how LAY arrived at the Cigar Club. The police also do not know how LAY got to Studio 58 where he was killed. None of the individuals with LAY on surveillance video have come forward with information. LAY's arriving at and leaving the Cigar Club with BANKS leads the police to believe that LAY and BANKS were traveling in a vehicle and that they likely traveled to Studio 58 together.

11. On June 13, 2023, at 0928 hours, while reviewing Facebook records for DEONTA BANK'S account "Tom Ford," the police located a message that had been sent by BANKS to RONALD CRUMSEY, Rollin 60 gang associate, on May 27, 2023, which says, "Nigga quit

4

spreading them bogus ass rumors I Fw hard and ko I tried to stop that shit before the punch was throwed." Your affiant knows that based on the investigation, LAY used the moniker "KOKO" and MCDOWELL uses the moniker "HARD." This statement confirms that BANKS was at the scene of the homicide and very likely observed the altercation and the homicide that occurred.

12. Investigators believe it is likely that the individuals who were present at both the Cigar Club and later at Studio 58 on the night of the homicide could be potential witnesses and/or suspects in the homicide case. The tower dump records from all of the locations will further the investigation to determine who was at the Cigar Club, and who also traveled to Studio 58 later, and then who traveled to Erlanger Hospital after the homicide occurred. As such, the information obtained from the Service Providers is relevant and material to the ongoing criminal investigation because it could help identify potential suspects and/or witnesses who were present.

13. Based on training and experience, I know that it is common for suspects to carry and use cell phones to coordinate their movements and facilitate their crimes. Furthermore, most people simply carry their cell phones at all times.

14. In my training and experience, I have learned that the Service Providers are companies that provides cellular communications service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

15. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

16. Based on my training and experience, I know that cellular providers, such as the Service Providers, routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications. For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower), to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication. These records may also include the source and destination telephone numbers associated with the communication (including the number of the telephone that was called or that called the locally served wireless device) and the type of communication (e.g., phone call or SMS text message) that was transmitted.

6

17. Based on my training and experience, I know that cellular providers, such as the Service Providers, have the ability to query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce the information described above. I also know that cellular providers have the ability to determine which cellular tower(s) provided coverage to a given location at a particular time.

18. Based on my training and experience and the above facts, information obtained from cellular service providers such as the Service Providers that reveals which devices used a particular cell tower (and, where applicable, sector) to engage in particular communications can be used to show that such devices were in the general vicinity of the cell tower at the time the communication occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of the Cigar Club prior to the individuals traveling to Studio 58, the cellular devices that traveled to Studio 58, the cellular devices that were present during the altercation at Studio 58, the cellular devices that were present during the time the crime occurred at Studio 58, and the cellular devices that traveled to Erlanger Hospital. This information, in turn, will assist law enforcement in determining which person(s) were present at the Cigar Club, at Studio 58 during the homicide, and at Erlanger Hospital.

19. The government will protect tower dump information related to innocent third parties by seizing only information relevant to phones that used more than one tower as identified in Attachment A.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

21.  I further request that the Court direct the Service Providers to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Providers, who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

22.  I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

*[signature]*
Matthew Hennessee
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on the 4th day of August, 2023

*[signature]*
HONORABLE CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE SEARCH OF   )
INFORMATION ASSOCIATED WITH      )   CASE NO. 1:23-MJ-228
PARTICULAR CELLULAR TOWERS       )
                                 )   **Filed Under Seal**
                                 )

## ATTACHMENT A

**Property to Be Searched**

Records and information associated with communications to and from the following cellular antenna towers ("cell towers") on the identified date(s) and timeframe(s) that are within the possession, custody, or control of the cellular service provider(s) identified below (all times are Eastern Standard Time):

- The cellular towers that provided cellular service to 1518 Market Street, Chattanooga, Tennessee 37408 between 2100 hours on May 25, 2023 and 0100 hours on May 26, 2023;

- The cellular towers that provided cellular service to 4817 Highway 58, Chattanooga, Tennessee 37416 between 0030 hours on May 26, 2023 and 0200 hours on May 26, 2023; and

- The cellular towers that provided cellular service to 975 East 3rd Street, Chattanooga, Tennessee 37403 between 0130 hours on May 26, 2023 and 0230 hours on May 26, 2023.

Page 1 of 2

Case 1:23-mj-00228-CHS   Document 3   Filed 08/04/23   Page 14 of 17   PageID #: 17

The following cellular service provider(s) are required to disclose information to the United States pursuant to this warrant:

1. Verizon Wireless, a cellular service provider headquartered in Bedminster, New Jersey;

2. AT&T, a cellular service provider headquartered in North Palm Beach, Florida;

3. Sprint, a cellular service provider headquartered in Overland Park, Kansas;

4. Nextel, a cellular service provider headquartered in Reston, Virginia;

5. T-Mobile, a cellular service provider headquartered in Parsippany, New Jersey;

6. Metro PCS, a cellular service provider headquartered in Richardson, Texas;

7. Cricket Communications, a cellular service provider headquartered in Atlanta, Georgia; and

8. U.S. Cellular, a cellular service provider headquartered in Chicago, Illinois.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH PARTICULAR CELLULAR TOWERS | CASE NO. 1:23-MJ- 2 2 8<br><br>**Filed Under Seal** |

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be Disclosed by the Provider**

For each cell tower in described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States records and other information (not including the contents of communications) about all communications made using the cellular tower(s) identified in Attachment A during the corresponding timeframe(s) listed in Attachment A, including records that identify:

  a. the telephone call number and unique identifiers for each wireless device in the vicinity of the cell tower ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

  b. for each communication, the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device; and

Page 1 of 2

      c. the date, time, and duration of each communication.

These records should include records about communications that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. Section 1959 during the period of May 25, 2023 to May 26, 2023.

The government will protect tower dump information related to innocent third parties by seizing only information relevant to phones that used more than one tower as identified in Attachment A.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Providers in order to locate the things particularly described in this Warrant.